UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAJUAN FURMAN,

        Plaintiff,

v.

UNKNOWN TRAYLOR et al.,

        Defendants.
_____/

Case No. 1:19-cv-820

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### **Discussion**

#### I.    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility, after Plaintiff had been transferred from the

Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following ICF officials: Property Room Officer Unknown Brandt; Assistant Deputy Warden Unknown Traylor; and Sergeant Unknown Conklin.

Plaintiff alleges that, on June 11, 2019, while housed at DRF, he was sent to segregation and written a Class-I dangerous-contraband misconduct ticket[1] for possession of a cell phone, arising out of the posting of a video on Facebook that depicted Plaintiff and four other inmates. At the time of the incident, Plaintiff had been housed in Level-II security.[2] On June 18, 2019, Plaintiff was found guilty of the misconduct charge. He was sanctioned with 7 days' detention and 20 days' loss of privileges, as were the other four inmates. On June 20, 2019, Plaintiff was informed that the Security Classification Committee (SCC) had determined that Plaintiff (like the other inmates involved in the incident) should be sent to administrative segregation after he completed his detention. (*See* Compl., ECF No. 1, PageID.7; Security Reclassification Notice, ECF No. 1-1, PageID.16.)

Prior to being found guilty of the misconduct charges, two of the involved inmates had been released from segregation to Level-IV housing. On June 27, 2019, Plaintiff was transferred to Level-V housing at ICF. Plaintiff complains that his true management level is Level IV and that he therefore should not have been placed in Level-V housing. When Plaintiff complained about his placement, he was told by various non-defendant officers that he would be

---

[1] Under MDOC Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The Class-I misconduct charge for possession of dangerous contraband expressly includes the possession of a "cell phone or other electronic communication device or accessory." (MDOC Policy Directive 03.03.105, Attachment A (Code 030) (July 1, 2018).).

[2] In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and administrative segregation. MDOC Policy Directive 05.01.130 ¶ B (Oct. 10, 2011). There are two types of segregation: administrative segregation and punitive segregation. MDOC Policy Directive 04.05.120 ¶¶ L, U (Sept. 27, 2010). Administrative segregation is the most restrictive and is imposed for institutional security, *e.g.*, when a prisoner poses a serious escape risk. *Id.* ¶ L. Detention, or "punitive segregation," can be imposed as a sanction for committing a major misconduct, if ordered by the hearing officer. *Id.* ¶ U.

at ICF for awhile and that he should not have had a cell phone. When Plaintiff claimed that he personally did not have a phone, he was advised that he "made the news as the ring leader." (Compl., ECF No. 1, PageID.6.)

Plaintiff claims that, upon information and belief, Defendant Sandborn declined to transfer Plaintiff to his true security level (Level-IV housing), in retaliation for having made the news, which reflected poorly on the job performance of prison guards. In addition, Plaintiff claims that his placement in Level V resulted in his being subjected to inhumane conditions, because, when Defendant Brandt sent his property, he did not bring Plaintiff his shower shoes and toothpaste. As a result, Plaintiff contends, he was forced to wear his state-issued shoes into the shower on nine days between July 2 and July 21, 2019. Because Plaintiff wore his state shoes into the shower, he developed rashes on his feet. Plaintiff was told that he would not receive his other shower shoes and that he should buy a new pair. Plaintiff purchased shower shoes on July 22, 2019.

Plaintiff also complains that, following his transfer to ICF segregation, he was not given the toothpaste that he possessed in his personal property, and he contends that the deprivation continued until the time he filed his complaint. Plaintiff alleges that Defendant Conklin lied in a grievance response when he stated that Plaintiff admitted having received toothpaste. Plaintiff states that he was permitted to have the toothpaste stored in his property, and he references prison policy and the segregation-store list as evidence that he is allowed to purchase non-see-through toothpaste while in segregation. He also alleges that he also has been skipped for exercise in the yard on 46 occasions by unnamed officers and that he did not receive his television for nine days after he had gotten off of loss-of-privileges status on July 17, 2019.

In his next set of allegations, Plaintiff complains that he sent a kite to the warden, requesting legal forms for filing a complaint. He was told to kite the litigation coordinator. The litigation coordinator informed Plaintiff that he should ask the librarian for the forms. When Plaintiff requested the forms from the law library, he was informed that the library did not carry the forms. (*See* Ex. H-J to Compl., ECF No. 1-1, PageID.22-24.) Plaintiff contends that Defendants were playing games with him and giving him the runaround.

In addition, Plaintiff alleges that Defendant Brandt forged Plaintiff's prisoner personal property receipt by adding an item to the list of property (a footlocker that arrived on July 9, 2019), after Plaintiff signed the list of property on June 28, 2019. Plaintiff alleges that the "forgery" leads to the incorrect assumption that Plaintiff approved the contents of the footlocker.

Plaintiff complains that, when he asked where his shoes were, he was told they had been "[d]onated to Facebook." (Compl., ECF No. 1, PageID.12.) He also alleges that he did not sign the property list because Defendant Brandt did not write down his missing items. When Plaintiff complained to Defendant Traylor about his missing items, Defendant Traylor responded, "Aint you the guy who was on Facebook [and] made the M.D.O.C. look bad. Oh you gone wish they never sent you here." (*Id.* (verbatim).) Plaintiff alleges that Traylor's response evidences a retaliatory motive and an intent to subject Plaintiff to cruel and unusual punishment in the form of inhumane treatment and harassment.

Plaintiff seeks an injunction transferring him to his appropriate security-classification level. He also seeks compensatory damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Security-Classification Level

Plaintiff contends that he has been improperly placed in administrative segregation at a Level-V prison, rather than at a Level-IV prison, despite the fact that Level IV is his true security level. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same);

6

*O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

### IV. Misstatement in Grievance Response

Plaintiff contends that, in denying Plaintiff's Step-I grievance about the deprivation of his television, shower shoes, and toothpaste, Defendant Conklin falsely stated that Plaintiff had admitted that he received his toothpaste. Plaintiff contends that Defendant Conklin's false statement amounts to a constitutional deprivation. Presumably, Plaintiff intends to allege Conklin's inaccurate statement deprived Plaintiff of his right to a fair grievance process, his right to petition government, or his right to access the courts.

Plaintiff fails to make specific factual allegations against Defendant Conklin, other than his claim that Conklin failed to conduct an investigation in response to his grievances or misstated facts in reaching a grievance decision. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an

administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Conklin, by inaccurately resolving a grievance, engaged in any active unconstitutional behavior.

In addition, Plaintiff has no due process right to file or pursue a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Conklin's inaccurate statement in the grievance response did not deprive Plaintiff of due process.

Further, Petitioner's right to petition government is not violated by Defendant Conklin's failure to properly act on Plaintiff's grievance. The First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

Finally, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways

8

in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from succeeding on his grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Conklin.

### V. Retaliation

Plaintiff argues that Defendants Traylor and Brandt retaliated against him for causing embarrassment to the MDOC by neglecting to give him his shower shoes and toothpaste for several weeks, thereby subjecting him to inhumane treatment.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim fails at the first step. Plaintiff was not engaged in protected conduct when he participated in the use of a prohibited cell phone to post videos of prisoners on Facebook. Conduct that violates a legitimate prison policy—here, the possession and use of a cell phone in violation of MDOC Policy Directive 03.03.105, Attachment A (Code 030)—is not protected by the First Amendment. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (calling a hearing officer a "foul and corrupt bitch" amounted to insolence under MDOC disciplinary regulations and so is not protected conduct). *See also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) (holding that "backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected"); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain

of theological errors during a religious service had engaged in an unprotected challenge to institutional authority). Because Plaintiff did not engage in protected conduct, Defendants' allegedly retaliatory statements and conduct did not violate the First Amendment.

## VI. Denial of Property Without Due Process

Plaintiff alleges that he was deprived of his television for nine days after his arrival in ICF administrative segregation, in violation of prison policy. He also alleges that the shower shoes and toothpaste stored with his prison property have not been returned to him while he remains in segregation, ostensibly in violation of prison policy.

To the extent that Plaintiff alleges that prison policy entitled him to possess the property in issue, Plaintiff fails to state a claim. Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff claims that he was deprived of his property without due process, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-

11

deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims will be dismissed.

## VII. Eighth Amendment

Plaintiff contends that he was subjected to inhumane conditions in violation of the Eighth Amendment. First, he complains that his shower shoes were not delivered with his property and that he was without shower shoes for nine shower periods from July 2, 2019, through July 21, 2019, when he bought new shower shoes. Plaintiff contends that, without shower shoes, he was forced to shower in his regular, state-issued shoes, which led to rashes caused by wearing wet shoes. In addition to his claim about his shower shoes, Plaintiff alleges that, since the time of his arrival in administrative segregation at ICF on June 27, 2019, until he filed his complaint on October 10, 2019, he was not given the toothpaste he had in his personal property. Finally, Plaintiff complains that he missed 46 yard periods between July 8, 2019, and September 10, 2019, when he was placed in the ICF general population. He contends that missing the yard periods violated prison policy and the Eighth Amendment.

As earlier discussed, the failure to follow prison policy does not violate the constitution. *Lugar*, 457 U.S. at 924; *Laney*, 501 F.3d at 580-81. The Court therefore will consider only whether the alleged conduct violated the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with

13

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

"Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

To the extent that Plaintiff alleges that the lacked shower shoes on the nine dates of his showers between July 2 and July 21, 2019, he alleges nothing more than a temporary inconvenience. Plaintiff's allegation that he was "forced" to wear his state-issued shoes into the

14

shower is unsupported by the facts contained in the complaint; the allegations show only that he elected to leave his street shoes on while showering, so that he was forced to wear wet shoes, which in turn caused a rash. Plaintiff's allegations about his three-week lack of shower shoes do not support a conclusion that he was deprived of the minimal standards of decency contemplated by the Eighth Amendment, much less that any of the named Defendants was deliberately indifferent to that deprivation.

To the extent that Plaintiff complains about being deprived of his toothpaste, Plaintiff's allegations also fall short of meeting the constitutional standard. In *Flanory v. Bonn*, 604 F.3d 249 (6th Cir. 2010), the Sixth Circuit recognized that the deprivation of toothpaste could rise to the level of deliberate indifference to serious hygiene needs. *Id.* at 255-56 (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). However, although Plaintiff alleges that Defendants did not give him the toothpaste packed in his prisoner property, Plaintiff utterly fails to allege that Defendants totally deprived him of necessary oral-hygiene items. Indeed, Plaintiff acknowledges that he is permitted to purchase a particular type of toothpaste from the inmate store. (*See* Compl., ECF No. 1, PageID.9; Segregation Store Order Form, ECF No. 1-1, PageID.26 (listing Freshmint Floride Toothpaste for $0.17 per .85 oz., limit of 4); MDOC Policy Directive 04.05.120, ¶ AA(7) (listing right of segregation prisoners to possess toothpaste).) Plaintiff's financial records, submitted with his complaint, demonstrate that he had the financial wherewithal to make such a toothpaste purchase. Plaintiff therefore fails to allege that he did not and could not have acquired and possessed toothpaste during his period of segregation. He merely asserts that Defendants deprived him of his right to receive the toothpaste already in his personal property, which Warden Davids

15

(not a Defendant) had informed Plaintiff he would receive when he had been released to general population. (*See* Step-II Grievance Response, ECF No. 1-1, PageID.21.) For these reasons, Plaintiff fails to allege facts sufficient to demonstrate that he either faced a sufficiently serious risk to his health or safety or that any Defendant acted with deliberate indifference to his health or safety by failing to give him his property. *Mingus*, 591 F.3d at 479-80.

Further, Plaintiff's allegations concerning the deprivation of yard privileges fails to state a claim against any Defendant. Plaintiff alleges that "different yard cops" marked on his door sheet that he had refused exercise in the yard 46 times before he was released to general population on September 10, 2019. He makes no factual allegations that the three Defendants in this action participated in these deprivations. As earlier discussed, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575-76; *Greene*, 310 F.3d at 899. Plaintiff alleges no facts suggesting that Defendants engaged in active conduct depriving him of his yard privileges. He therefore fails to state a claim against them for this deprivation.

Finally, to the extent that Plaintiff generally complains that his placement in segregation itself constituted an Eighth Amendment violation, his claim will be dismissed. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial

16

of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

For all these reasons, Plaintiff fails to state an Eighth Amendment claim against any Defendant.

**VIII. Access to the Courts**

Plaintiff alleges that the ICF warden referred Plaintiff's request for legal forms to the litigation coordinator, Mr. Smith, who told Plaintiff to contact the library, which in turn advised Plaintiff that it did not have the forms he wanted. Plaintiff contends that the referrals to other officers amounted to harassment and denied Plaintiff access to the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

18

Here, Plaintiff does not identify the nature of the forms he sought or how any delay in his receipt of those forms prejudiced any nonfrivolous cause of action. To the extent that Plaintiff sought forms to file the instant civil rights complaint, he ultimately obtained and completed this Court's form complaint for a prisoner civil rights action. (*See* Compl., ECF No. 1.) Moreover, the complaint was filed within one month of Plaintiff being placed in the ICF general population and less than four months after the first of the actions about which he complains. As a result, Plaintiff can demonstrate no prejudice to his action caused by the delay in receiving forms.

Finally, even if his access-to-the-courts claim were not meritless, it would fail against the Defendants named in this action. Plaintiff makes no allegation that any named Defendant actively participated in any of the referrals of his requests for complaint forms. They therefore may not be held liable for any violation of his right to access the courts. *Iqbal*, 556 U.S. at 676.

### IX. Pending Motion

Also before the Court is Plaintiff's motion to appoint counsel. (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606.

Because Plaintiff's complaint fails to state a claim, his motion to appoint counsel (ECF No. 3) will be denied as moot.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:   November 25, 2019            /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE